COOK (HAWES v.). See Case No. 6,236.

═══

## Case No. 3,160.
### COOK v. HOWARD et al.
[4 Fish. Pat. Cas. 269.] [1]

Circuit Court, D. Massachusetts. Oct., 1870.

PATENTS—"ROTARY DEFLECTOR OR VENTILATOR"—INFRINGEMENT—CONSTRUCTION—PLEADING AND PROOF.

1. No notice will be taken of defenses set up in an answer where the burden is upon the respondent, unless some proof is introduced in their support.

2. Improvements by subsequent inventors are entitled to protection if duly secured by letters patent, but the letters patent must not be so construed as to absorb what is secured to prior patentees.

3. A claim for "a rotary deflector or ventilator" in which the deflector is reversed by rotating it half round the axis of the orifice, is infringed by a reflector having a partial rotation about a vertical axis, the other characteristics being common to both.

This was a bill in equity filed [by James M. Cook] to restrain the defendants [George E. Howard and others] from infringing letters patent [No. 13,676] for an "improved dust deflector for the windows of railroad cars," granted to complainant October 16, 1855, and extended for seven years from October 16, 1869.

The invention consisted in a semicircular deflector fastened to an annulus by a rod passing through the deflector and annulus, and serving to turn both at option. The annulus rested upon a ring provided with projections for holding and guiding the deflector, which ring was fastened above or aside of the car window, over an opening leading through the side of and into the car. The deflector could thus always be turned so that the current of air coming from either direction would impinge against its outer surface, and create a current through the opening outward from the car, thus ventilating the latter while excluding dust or cinders from entering the opening.

The disclaimer and claim were as follows: "I do not claim the application of a curved deflector on the outside of the window-opening of a railway carriage, nor making the same to extend under the window and up one side thereof. But I claim the rotary de-

───

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

flector or ventilator, constructed and made to operate substantially in the 'manner and for the purpose specified."

James B. Robb, for complainant.
Causten Browne, for defendants.

CLIFFORD, Circuit Justice. Claims for compensation subsequently relinquished by stipulation exhibited in the record, will not be noticed, nor will defenses set up in an answer be examined, where the burden is upon the respondent, unless some proof is introduced in their support. Letters patent, if in due form, afford prima facie evidence that the person alleged to be the inventor was the original and first inventor of what is therein described as his improvement, and where no proofs are introduced to support the allegation of the answer, that the alleged inventor was not the original and first inventor of the same, the finding of the court in an equity suit must necessarily be for the complainant. No such proofs were introduced in this case, and of course the finding of the court on that issue must be adverse to the respondents. Such being the state of the case, the only issue to be determined is whether · the ventilators made and sold by the respondents infringe the letters patent on which the suit is founded. Deflectors or ventilators like Exhibit B, as introduced in evidence, have been made and sold by the respondents "within the time covered by the bill of complaint," and the parties agree that they, the respondents, continue to make devices of that form and mode of operation. Tested by that admission as the case must be, the only inquiry is, whether the deflectors or ventilators made and sold by the respondents infringe the patented invention of the complainants, which must be determined by a comparison of the mechanism described in the letters patent on which the suit is founded with the device introduced in evidence as a specimen device of the deflectors or ventilators made and sold by the respondents. In constructing his invention, the complainant makes use of a bent strip of metal, representing a semicircular or arched deflector or dust-guard, having one edge curved, and the other edge fastened to a circular flanged annulus, formed with a flange or lip extending entirely around it, and arranged with respect to it as exhibited in the drawings. Constructed as aforesaid, the circular flanged annulus is placed with its lip or flange on a stationary supporting ring, formed with a short neck extending within that annulus, and serving to support it in position, the annulus being so applied to the neck as to revolve thereon and be maintained against the stationary annulus by a series of overlapping projections extending from the stationary annulus, and over the flange of the revolving annulus, as more fully exhibited in the drawings annexed to the specification. Superadded to this arrangement a rod is carried diametric-ally across the supporting ring, and firmly fastened thereto at its ends, which serves the purpose of a lever or means by which the ring and the deflecting guard may be simultaneously rotated on the stationary annulus. Combined as described, the patented invention, called a device for ventilating railway carriages, is fixed flatwise to the vertical side of the car in some convenient position against an opening through the side of the car, the axis of the opening being coincident with that of the neck of the supporting ring, where the diameter of the opening is made to correspond with that of the said neck. Minute description is also given of the operation of the patented device which shows to the satisfaction of the court that it is new and useful in accomplishing the purpose for which it is intended. Whatever may be the direction in which the car may be moved, whether forward or backward, and whatever may be the direction of the external aerial current, whether upward or downward, horizontally or inclined to the horizon, the statement of the patentee is that the deflector, as constructed and combined, may be rotated and fixed in position to operate to the best advantage, the current of air impinging against its external or outer surface, so as to create a current through the opening, and also to exclude dust, sparks, or cinders from entering the car through that aperture. He does not claim the application of a curved deflector on the outside of the window-opening of a railway carriage, nor does he claim the "making the same to extend under the window and up one side thereof." "But what I do claim as my improvement," says the patentee, "is the rotary deflector or ventilator constructed and made to operate substantially in the manner and for the purpose as specified." Examined in the light of these suggestions as drawn from the specification of the letters patent, it is clear that the construction and mode of operation of the complainant's deflector are well described by his principal witness. Speaking of the manner of constructing the device and of its mode of operation, he says that an orifice is made through the side of the car, to the forward side of which a projecting plate is applied, which surrounds the orifice in the forward half of its circumference, and projects outward from the side of the car a sufficient distance so that the deflector or plate, in passing through the air as the car is moved forward, throws a current outward, and away from the side of the car, over the orifice, the effect of which is to produce a rarification of the air between that current and the side of the car, and over the orifice, causing the air to flow outward from the interior of the car through the orifice, and thus producing the necessary ventilation. Deflectors, in order that they may be equally useful on railway cars, whether the car moves backward or forward, must have the means of reversal, as a car may be moved either backward or forward,

and if unprovided with the means of reversal the deflector would be detrimental or useless whenever the car was moved in a direction opposite to that for which the deflector was adjusted. Means for the reversal of a deflector of some kind are essential to the utility of the invention, as the position of the deflector must be changed whenever the car is moved in a direction opposite to the one for which the deflector was adjusted. Applied as the deflector invented by the complainant is, to a circular orifice, the means employed by him to accomplish the reversal of the deflector are different in form from the means employed for that purpose by the respondent in the deflectors which they have made and sold, as exemplified in the specimen introduced in evidence. In the mechanism shown in the specification of the complainant's patent, the deflector is reversed by rotating it half round the axis of the circular orifice by means of a joint, but in the exhibit introduced as a specimen of the deflectors made and sold by the respondents, the reversal is produced by a partial rotation about a vertical axis, the two halves of the deflector upon the sides of the axis being symmetrical, and so formed and arranged that when one side of the deflector is shut down close to the orifice, the other side will project from the side of the car sufficiently to produce the outward current as before explained, by which the air is exhausted through the orifice. Certain additions are made to the deflectors of the respondents, as, for example, they extend the deflector over the orifice to shut out the rain; but so far as the ventilation is concerned, that is, so far as respects the means for exhausting the air through the orifice surrounded by the deflector, they are the same in substance and effect, differing only in form, and they have the same mode of operation. Complainant's invention is called a rotary deflector as contradistinguished from a vibratory deflector, but neither the rotation nor the vibration of the device has anything to do with causing the exhaustion of the air through the orifice to which the deflector is applied. They are employed solely for the purpose of changing the position of the deflector when the direction of the car is reversed, or to accommodate the device to the direction of the wind, but they do not have any effect in exhausting the air through the orifice. Such differences are, in the opinion of the court, mere formal differences, which, in the comparison of the two deflectors, do not make the one substantially different from the other in the sense of the patent law. Attempt is made by the respondents in argument, to show that the complainant, if that construction is given to the claim of his patent, is not the original and first inventor of the improvement; but it is clear that such a defense is not open to the respondents, as they never gave the required notice, and did not introduce any competent proofs to establish any such proposition. Evidence of an expert character was introduced by the respondents to show that the deflectors made and sold by them were in several respects different from the mechanism described in the letters patent of the complainant, and those several suggestions, as expressed in the testimony of the respondents' expert, were urged in argument with much ability, but they are not sufficient to protect the respondents from the charge of infringement, as they do not touch the means by which the air is exhausted through the orifice surrounded by the deflector.

They all have respect either to the means of changing the position of the deflector, when the direction of the car is reversed, or to certain improvements or additions made by the respondents in their deflectors which are not found in the complainant's patented invention. Some means for changing the position of the deflector when the direction of the car is reversed, are certainly essential, but no alteration of that part of the mechanism employed by the complainant will justify the respondents in appropriating the whole substance of the complainant's invention by which the air is exhausted through the orifice surrounded by the deflector. Mere formal differences of the kind mentioned will not justify a third person in making, using, or vending to others to be used, the invention of another duly secured by letters patent, nor will any improvement which such third person has made to a prior invention, confer any such right, if the prior invention is duly secured by letters patent. Improvements by subsequent inventors are entitled to protection if duly secured by letters patent, but the letters patent must not be so construed as to absorb what is secured to prior patentees.

Decree for complainant.